IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO.

DYLAN CAMPBELL,

    Plaintiff,

v.

UNIVERSAL CITY DEVELOPMENT
PARTNERS, LTD. d/b/a VOLCANO BAY,

    Defendant
_____/

## COMPLAINT

**COMES NOW**, the Plaintiff, DYLAN CAMPBELL, by and through the undersigned counsel, and sues Defendant, UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. d/b/a VOLCANO BAY ("VOLCANO BAY") for causes of action, and in support thereof states as follows:

### JURSIDICTION AND VENUE

1.    This Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331, and 28 U.S.C. 1343 for the Plaintiffs claims arising under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 (hereinafter "ADA"), and supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims under the Florida Civil Rights Act. In this action, Plaintiff suffered injuries and now seeks damages.

2.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (a) the Defendant is in this judicial district, and (b) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and are occurring within this judicial district.

## PARTIES

1. Plaintiff, DYLAN CAMPBELL is a resident of Coconut Creek, Florida, and is *sui juris*.

2. Defendant, UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. d/b/a VOLCANO BAY ("VOLCANO BAY"), owns and operates a twenty-seven-acre themed water park located at 6000 Universal Boulevard, Orlando, Florida 32819.

3. VOLCANO BAY owns, leases, or operates a place of public accommodation as defined by the ADA, 42 USC § 12181(7), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. VOLCANO BAY is responsible for complying with the obligations of the ADA.

4. VOLCANO BAY is a place of public accommodation and a place of entertainment as defined by § 760.02(11), Florida Statutes.

## INTRODUCTION; BACKGROUND

5. CAMPBELL was born without a right forearm and hand. While this characteristic has led people to question his ability to accomplish various tasks, CAMPBELL does everything that a person does with two hands. This includes, but is not limited to:

    a. Participating in sports from a very young age [ultimate frisbee, soccer, tennis, competitive basketball in high school, and earning a 1st degree black belt],

    b. Pursuing a music career while working a remote managerial position,

    c. Being an active member of the community by performing for children with disabilities, and

    d. Taking care and spending time with of his son

6. CAMPBELL does not require any special accommodations to complete his job or additional daily tasks.

7. On May 10th, 2019, CAMPBELL, his family, and his ex-wife's family, took a trip to VOLCANO BAY for his son's seventh birthday. The trip was a big occasion with a total party of twelve people and the families rented multiple houses and the adults took time off of work.

8. Aware of his disability, CAMPBELL went to guest services upon arrival at the park and spoke to a VOLCANO BAY employee.

9. The VOLCANO BAY employee assured CAMPBELL that he would have no issues riding anything in the park. CAMPBELL offered to sign a liability waiver to make sure that no issues would arise. Again, the VOLCANO BAY employee assured CAMPBELL that a liability waiver would not necessary.

10. Once they left guest services, the whole family went to ride the "Body Plunge" water slide, the biggest slide in the park that shoots straight down.

11. No ride operator questioned CAMPBELL's ability to ride the "Body Plunge." The lifeguard waiting at the bottom of slide greeted CAMPBELL and asked him how he enjoyed the ride.

12. The family moved on to ride a different ride. This ride was raft-style, with four people in a raft interlocked together and with handles on the outside rim of the raft.

13. As CAMPBELL and his family approached the front of the line, he noticed the ride operator looking and staring strangely at him.

14. The ride operator pulled CAMPBELL out of line, notifying him that she would have to call her manager because she told CAMPBELL that he was "unfit" to ride the raft-style ride.

15. CAMPBELL explained to the ride operator that he had been cleared by guest services to ride any ride in the park and that he had just ridden a water slide.

16. The ride operator responded that CAMPBELL needed to be able to hold on with both hands.

17. When the manager arrived, he looked at CAMPBELL. As he analyzed the situation, he stated that CAMPBELL was "unfit" to ride ***anything*** in the park. He stated that if Mr. Campbell had an arm *at least up to his elbow* then he would be allowed to ride.

18. After a period of time, Mr. Campbell and his family asked to speak to another manager or supervisor. A second manager came to speak to the family. He handed the family a map with several highlighted rides that he considered "safe" for Mr. Campbell to ride, which were all rides that did not involve rafts.

19. The second manager offered CAMPBELL a refund of his ticket and informed him that he would be allowed to stay in the park.

20. CAMPBELL, unsatisfied with the second managers offer, further expressed his concerns. He cited that the situation wasted a substantial amount of time of his family's trip and he would not be able to spend the time he wanted to with his son.

21. CAMPBELL spoke to his family and ex-wife, agreeing that she and her boyfriend would stay in the park while he left with the rest of the family.

22. As a result of the rules that excluded CAMPBELL from rides that used a raft, CAMPELL could not use a majority of the rides, such as Krakatau Aqua Coaster, Honu of the Honu Ika Moana, Dudley Do Right Ripsaw Falls, Popyeye and Bluto's Bilge Rat Barges, Puihi of Maku Puili Round Raft Ride, Maku of the Maku Puihi Round Raft Rides, Tonga of Taniwha Tubes, Raki of Taniwha Tubes, and many other rides.

23. The Americans with Disabilities Act, and the similarly interpreted Florida Civil Rights Act, define discrimination as the imposition or application of eligibility criteria that screen

out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

24.     While a public accommodation may impose legitimate safety requirements that are necessary for safe operation, safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities.

25.     VOLCANO BAY has failed to demonstrate any legitimate safety requirements that are based on actual risks, and not on mere speculation, stereotypes of generalizations about individuals with disabilities.

26.     While VOLCANO BAY has promulgated a universally applicable exclusionary rule, but it has (1) no manufacturers' analysis to support the rule, (2) has not demonstrated any reason why such rules are necessary, and (3) has not demonstrated how the requirements are related in any way to actual risks and not stereotypes.

27.     In fact, the industry standards for water rides at amusement parks contain no requirements for a person to be required to hold onto a raft with two hands.

28.     CAMPBELL has been on similar rides with the use of one arm without any difficulties whatsoever.

29.     VOLCANO BAY's across the board limitation is based on solely on stereotypes, overbroad and unfounded, and excludes CAMPBELL from the services, privileges and benefits of VOLCANO BAY.

30.     On November 18th, 2019, CAMPBELL filed a Public Accommodations Complaint of Discrimination with the Florida Commission on Human Relations, (hereinafter "FCHR").

31. In CAMPBELL's Complaint, he alleged discrimination by VOLCANO BAY pursuant to the Florida Civil Rights Act against a public accommodation for discrimination based upon disability.

32. Pursuant to Chapter 760.11, the Florida Commission on Human Relations may investigate a complaint of discrimination.  If the commission fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days of the filing of the complaint, an aggrieved person may bring a civil action against the person named in the complaint in any court of competent jurisdiction, as if the commission determined that there was reasonable cause.

33. The Florida Commission on Human Relations had failed to determine whether there is reasonable cause within 180 days, and as such, CAMBELL has chosen to bring a civil action in this court.

34. CAMPBELL would like to return to the Universal Studios' Volcano Bay Park and be able to obtain full and equal enjoyment of the accommodations of Volcano Bay, without discrimination or segregation on the ground of disability.

35. CAMPBELL and his extended family have taken vacations in Orlando for many years, and this was the second year in a row that they had vacationed at Universal and Islands of Adventure for CAMPBELL's son's birthday.  This trip was nostalgic for CAMPBELL because he was taking a vacation in the exact same place that he used to vacation with his family when he was younger.

36. CAMPBELL retained Disability Independence Group and has agreed to pay them their reasonable fees and costs for the prosecution of this matter.

37. CAMPBELL has satisfied all condition precedents, or all such precedents have been waived.

## COUNT I - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

38. CAMPBELL realleges and incorporates by reference the allegations of facts in paragraph 1 through 36, as if restated herein.

39. CAMPBELL is a qualified person with a disability, as he has a physical impairment that substantially limits a major life activity, he has a record of such impairment, and he is regarded as having an impairment by the Defendant herein.

40. VOLCANO BAY owns and operates a public accommodation and a place of entertainment, as defined by § 760.02(11)

41. VOLCANO BAY imposed eligibility criteria that screen out CAMPBELL or any other person that does not have two forearms and two hands, from fully and equally enjoying its services, facilities, privileges, advantages, or accommodations.

42. As a result of such eligibility criteria, CAMPBELL was not permitted to ride on raft-style rides which had handles for two hands to hold.

43. Such eligibility criteria were not based on actual risks, but were overbroad and based on mere speculation, stereotypes, or generalizations about individuals with disabilities.

44. As a result of the eligibility criteria for these rides, CAMPBELL was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of VOLCANO BAY due to discrimination on the ground of disability.

45.     CAMBELL sustained damages as a direct and proximate result of the VOLCANO BAY's discrmination, including humiliation, loss of dignity, mental anguish, and other non-economic harm.

46.     CAMBELL also demands the injunctive relief to be allowed to enjoy the place of entertainment with his son and ensure that eligibility rules that may be required are based on real risks, and not overbroad so that he and other persons with disabilities do not suffer discrimination based upon  in the future:

**WHEREFORE,** Plaintiff, DYLAN CAMPBELL, demands judgment against Defendants UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. d/b/a VOLCANO BAY, for compensatory damages, punitive damages, attorney's fees, injunctive relief, and costs incurred in bringing this action, and any such further relief the Court deems just and proper.

## COUNT II – AMERICANS WITH DISABILITIES ACT

47.     Plaintiff realleges and incorporates by reference the allegations of facts in paragraph 1 through 36, as if stated herein.

48.     CAMPBELL is a qualified person with a disability, as he has a physical impairment that substantially limits a major life activity, he has a record of such impairment, and he is regarded as having an impairment by the Defendant herein.

49.     Defendant violated Title III of the Americans with Disabilities Act by imposing and applying  eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations.

50. Defendant violated Title III of the Americans with Disabilities Act by failing to show that such criteria were necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.

51. Defendant violated Title III of the Americans with Disabilities Act by creating overbroad safety requirements that are not based on actual risks, but instead on mere speculation, stereotypes, or generalizations about individuals with disabilities.

52. VOLCANO BAY had knowledge of their obligations under the Americans with Disabilities Act and was deliberately indifferent to the rights of CAMPBELL and other individuals with disabilities who are similarly situated.

**WHEREFORE,** Plaintiff respectfully prays that this Court grants the following relief against the Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act permanently enjoining the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services. This includes entering a permanent injunction ordering the Defendant:

a. To ensure that any eligibitlity criteria imposed by the Defendant to use its public accommodation are based on real risks and are tailored to such risks, and not unduly broad and based upon stereotypes of disabilities.

b. To train its employees to ensure that the Defendant and its staff do not discriminate against individuals based on stereotypes and rules that are not tailored to actual risk;

c. To allow DYLAN CAMPBELL to return to VOLCANO BAY and use all of the rides he would like to use;

d. Award reasonable costs and attorneys' fees; and

e. Award any and all other relief that may be necessary and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL BY JURY IS PERMITED.**

Respectfully submitted on this 18th day of May, 2020.

By: *s/Matthew W. Dietz*
Matthew W. Dietz, Esq.
Fla. Bar No.: 0084905
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Telephone (305) 669-2822
Facsimile (305) 442-4181
mdietz@justdigit.org
aa@justdigit.org