# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DYLAN CAMPBELL,**

        **Plaintiff,**

v.                                              Case No: 6:20-cv-846-PGB-LRH

**UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD.,**

        **Defendant.**

_____/

## ORDER

This cause comes before the Court on the following filings:

1. Plaintiff Dylan Campbell's Motion for Summary Judgment on Liability (Doc. 29 ("**Plaintiff's Motion**")) and Defendant Universal City Development Partners, Ltd.'s response in opposition (Doc. 39); and

2. Defendant's Motion for Summary Judgment (Doc. 30 ("**Defendant's Motion**")) and Plaintiff's response in opposition (Doc. 37).[1]

Upon consideration, Plaintiff's Motion is due to be denied, and Defendant's Motion is due to be granted.

---

[1] Neither party filed a reply in support of their respective Motions.

I.  **BACKGROUND**

This case arises from Plaintiff's May 10, 2019 visit to Volcano Bay, a water amusement park operated by Defendant in Orlando, Florida, that features water amusement rides designed and manufactured by third-party ProSlide Technology, Inc. ("**ProSlide**"). (Doc. 28, ¶¶ 4, 6–7). That day, Plaintiff—who does not have a right forearm or a right hand and who does not use a prosthetic—attempted to ride ProSlide's Krakatau Aqua Coaster, a raft-style water amusement ride that propels riders up via linear induction motor technology (*i.e.*, magnetic propulsion forces) and then launches them down to water-filled channels. (*Id.* ¶¶ 1, 10). A Krakatau operator denied Plaintiff access because of his inability to hold the raft's handles with two hands and maintain the proper position at all times pursuant to the Volcano Bay Riders' Guide, a Florida-mandated compilation of the ridership eligibility criteria set forth in ProSlide's Operations Manuals for each water amusement ride. (*Id.* ¶¶ 6, 8–9, 11–21, 32). Volcano Bay managers then denied Plaintiff access to other water amusement rides under the same ProSlide-created, Defendant-enforced ridership eligibility criteria.[2] (*Id.* ¶¶ 6, D).

Plaintiff challenges the ridership eligibility criteria denying him access to the Contested Attractions under Title III of the Americans with Disabilities Act ("**ADA**") (Doc. 1),[3] which prohibits "the imposition or application of eligibility

---

[2]   The Court refers collectively to the Krakatau and the other ProSlide water amusement rides at issue in this action as the "**Contested Attractions**."

[3]   42 U.S.C. § 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

2

criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i); *see also* 28 C.F.R. § 36.301(b) ("A public accommodation may impose legitimate safety requirements that are necessary for safe operation. Safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities.").[4] Both parties now move for summary judgment, and the matter is ripe for review.

---

    advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." There is no dispute that Plaintiff has a "disability" within the meaning of 42 U.S.C. §§ 12102(1) and 12182, and Defendant clearly owns and operates a place of public accommodation under § 12181(7)(I). (Doc. 28, ¶ 3).

    Additionally, Plaintiff asserts an identical claim under the Florida Civil Rights Act ("**FCRA**"), but "Florida courts 'construe the [FCRA] in conformity with the [ADA].'" *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1155 (11th Cir. 2021) (quoting *City of Delray Beach v. DeSisto*, 197 So. 3d 1206, 1209 (Fla. 4th DCA 2016)).

[4]    Confusingly, Plaintiff's Motion cites to 42 U.S.C. § 12182(b)(2)(A)(ii), which prohibits the "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." (Doc. 29, p. 17). However, Plaintiff's ADA claim only proceeds under § 12182(b)(2)(A)(i). (Doc. 1, ¶¶ 48–52). Moreover, Plaintiff asserts that he can maintain the proper position on all the Contested Attractions, and he "does not seek any disability-related accommodations . . . to participate in the community activities that he chooses to do." (Doc. 28, ¶¶ 2, B). Defendant's response in opposition to Plaintiff's Motion also cites to § 12182(b)(2)(A)(ii), but this appears to be a mistake as Defendant refers to this subsection as the necessary eligibility criteria defense. (Doc. 39, pp. 19–20).

## II.     STANDARD OF REVIEW

To prevail on a summary judgment motion, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotations omitted).

The Court must "'view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant.'" *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne*, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  DISCUSSION

The question presented here is whether Defendant can disregard ProSlide's ridership eligibility criteria for the Contested Attractions under the ADA and Florida law. (Doc. 28, ¶ 22).

Plaintiff contends that ProSlide failed to demonstrate that its ridership eligibility criteria are necessary for patron safety, as demanded under Title III of the ADA. (Doc. 29, pp. 7–23). He emphasizes that ProSlide's hazard analyses for the Contested Attractions, performed by individuals without any experience in the development of safety standards for those with limb differences, did not assess the ability of persons with one natural arm to maintain the proper position on the Contested Attractions at all times or discern any specific risks to them. (Doc. 28, ¶¶ 23–32). Instead, relying on its own testing, the observations of and accepted parameters within the amusement park industry, and its 35-year history as a leading amusement ride designer and manufacturer, ProSlide identified general risks of patrons failing to maintain the proper riding position at all times, and the resulting Operations Manuals required patrons to possess two functioning hands or two natural arms terminating below the elbow. (*Id.*). Thus, Plaintiff posits that the ADA preempts Florida law to the extent it obligates Defendant to implement ProSlide's "arbitrary" ridership eligibility criteria. (Doc. 29, pp. 7–23). Plaintiff's factual arguments, and unsubstantiated conjectures in support thereof,[5] are

---

5   For instance, Plaintiff's Motion opines: "As a matter of common sense, the ability to maintain a riding position has more to do with core strength, using both back and abdominal muscles, than the placement of the limbs." (Doc. 29, pp. 6–7). Furthermore, Plaintiff's response in

ultimately inapposite because, as Defendant correctly points out, this is a purely legal inquiry.

The necessary eligibility criteria defense established by 42 U.S.C. § 12182(b)(2)(A)(i) explicitly contemplates restrictions on disabled individuals' access to places of public accommodation when such screening is essential for safety reasons, such as amusement rides. In fact, in promulgating 28 C.F.R. § 36.301(b), the Department of Justice illustrated the distinction between "legitimate safety requirements that are necessary for safe operation" and safety requirements based on "mere speculation, stereotypes, or generalizations about individuals with disabilities," using amusement rides as an example of the former category:

> It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater, or limit the seating of individuals with Down's syndrome to only particular areas of a restaurant. . . . A public accommodation may, however, impose neutral rules and criteria that screen out, or tend to screen out, individuals with disabilities, if the criteria are necessary for the safe operation of the public accommodation. Examples of safety qualifications that would be justifiable in appropriate circumstances would include height requirements for certain amusement park rides or a requirement that participants in a

---

opposition to Defendant's Motion comments that water amusement rides pose less risk to patrons than amusement rides because "[i]f a person falls out of a restraint in a roller coaster, they can fall hundreds of feet to their death," whereas, "in a water ride, it is expected that a rider will flip and flop and move from their back to their stomach." (Doc. 37, pp. 4–5).

The Court also notes that Plaintiff's briefs cite to a plethora of authority, many of which are nonbinding, that (1) have distinguishable factual circumstances, (2) deal with Titles I or II of the ADA, the Rehabilitation Act, or other inapposite statutes, or (3) both. (Doc. 29, pp. 9–10, 20–22; Doc. 37, pp. 8–9, 10–14).

> recreational rafting expedition be able to meet a necessary level of swimming proficiency.

56 Fed. Reg. 35544, 35564 (July 26, 1991).

Equally cognizant of the "promot[ion] of patron safety in the design, construction, assembly, disassembly, maintenance, and operation of amusement rides" within its borders, FLA. STAT. § 616.242(4) orders the Florida Department of Agriculture to adopt regulations for amusement rides that "are the same as or similar to" certain national safety standards,[6] including the American Society for Testing and Materials ("**ASTM**") International Committee F24 Standards on Amusement Rides and Devices.[7] In turn, the ASTM International Committee F24 Standards on Amusement Rides and Devices directs amusement ride operators to adhere to the manufacturer's ridership eligibility criteria. *See* FLA. ADMIN. CODE §§ 5J-18.0011(1), 5J-18.016; (Doc. 30-1, pp. 86–91, 98; *see also* Docs. 29, 30, 37, 39).[8]

---

[6] This includes the National Electric Code Handbook and the safety standards established by the National Fire Protection Association. § 616.242(4)(a)(2)–(3).

[7] Section 616.242(11)(a)(1) technically exempts Volcano Bay as a "[p]ermanent facilit[y] that employ[s] at least 1,000 full-time employees and that maintain[s] full-time, in-house safety inspectors." However, this provision still requires "[p]ermanent facilities that employ at least 1,000 full-time employees and that maintain full-time, in-house safety inspectors" to "file an affidavit of the annual inspection with the [Florida Department of Agriculture] on a form prescribed by department rule." *Id.* That affidavit requires Defendant to certify that all the amusement rides listed for Volcano Bay are in "general conformance with the requirements of Section 616.242(4)(a), Florida Statutes, and Rule 5J-18.0011, Florida Administrative Code," explained in more detail above. (Docs. 31-1, 31-2, 31-3, 31-4, 31-5).

[8] FLA. ADMIN. CODE § 5J-18.0011(1) adopts a list of ASTM standards, including, as is relevant here: F770, "Standard Practice for Ownership, Operation, Maintenance, and Inspection of Amusement Rides and Devices"; F1193, "Standard Practice for Quality, Manufacture, and Construction of Amusement Rides and Devices"; F2291, "Standard Practice for Design of Amusement Rides and Devices"; and F2376, "Standard Practice for Classification, Design, Manufacture, Construction, and Operation of Water Slide Systems." (Doc. 30-1, p. 6, ¶ 27). Notably, while not included in the parties' Stipulation of Material Facts (Doc. 28), the parties

The ADA does not preempt the Florida law and its accompanying regulations. *See generally Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (explaining the preemption doctrine); *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1186 (11th Cir. 2017) (same). There is no evidence from the text of 42 U.S.C. § 12182(b)(2)(A)(i), specifically, or the structure of Title III, generally, that Congress meant to oust the Florida Legislature from the entire legislative field, including, as is relevant here, the regulation of patron health and safety in the amusement park setting. To the contrary, Congress expressly anticipated the need for and exempted necessary eligibility criteria, and the Department of Justice recognized that such justifiable restrictions exist in the amusement ride context, a unique and inherently risk-laden form of entertainment. Far from standing as an obstacle to Congress' purpose of eliminating disability discrimination in places of public accommodation, the Florida regulations fit within the federal statutory scheme by using the state's historic police powers to institute a "floor" of neutral ridership eligibility criteria that the Florida Legislature deems necessary for the safe operation of amusement rides.[9]

---

do not dispute that the ASTM standards require amusement ride operators to adhere to the manufacturer's ridership eligibility criteria.

[9] In a directly applicable case, the Northern District of Texas expressed preemption concerns but deferred ruling on the matter because "defendants to these suits still bear the burden of proving their defense on the merits, not by simply stating they are required to do it under state law." *Bench v. Six Flags Over Texas, Inc.*, No. 3:13-CV-705, 2014 WL 12586743, at *7–8 (N.D. Tex. July 7, 2014). However, the Court finds the *Bench* court's preemption concerns baseless for the reasons state above, and it disagrees with the *Bench* court's decision to defer ruling on the matter. "A facial challenge presenting a purely legal argument"—such as preemption— "does not rely on a developed factual record." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (internal quotations omitted).

8

Section 616.242 indicates a reasonable policy choice by the Florida Legislature: that the ASTM should be responsible for articulating what ridership eligibility criteria are necessary for the safe operation of amusement rides because the ASTM specializes in the formation and publication of technical safety standards for a variety of industries, including the amusement park industry. Likewise, the ASTM's determination that the manufacturers should evaluate this issue is reasonable because they "are in the best position" to gauge what ridership eligibility criteria are necessary for patron safety. *Masci v. Six Flags Theme Park, Inc.*, No. 12-6585, 2014 WL 7409952, at *10 (D.N.J. Dec. 31, 2014).[10]

In sum, the Court does not believe that the ADA requires Defendant to reevaluate ProSlide's ridership eligibility criteria to decide whether they are, in fact, necessary. Rather, Florida law, by adopting the ASTM's safety standards, considers ProSlide's ridership eligibility criteria necessary for the safe operation of the Contested Attractions. *See id.* Consequently, Defendant's compliance with

---

[10] Both parties discuss whether Plaintiff has an ADA claim against ProSlide. (Doc. 29, pp. 15–17; Doc. 30, p. 21 n.7; Doc. 39, pp. 16–18); *see Castelan v. Universal Studios Inc.,* No. CV 12-05481, 2014 WL 210754, at *7 (C.D. Cal. Jan. 10, 2014) (stating, in dicta, that "[i]f Plaintiffs believe the restrictions are overprotective, they are free to initiate an action against the manufacturer"); *Bench*, 2014 WL 12586743, at *8 (stating, in dicta, that because manufacturers are not operators or owners of "places of public accommodation" under Title III, amusement parks "are the ones who must answer for" discriminatory ridership eligibility criteria and that, if amusement parks "are concerned about compliance with state law, the appropriate method is to file a suit to be released from their state law obligations—not discriminate now, deflect later"). This discussion is irrelevant to the question presented here, and the Court cannot and will not issue an advisory opinion on the matter. However, the Court briefly notes the flaw in the *Bench* court's dicta: disabled persons' ostensible lack of recourse under Title III for allegedly discriminatory ridership eligibility criteria created by the manufacturer and enforced by the amusement park pursuant to state law does not give the Court the power to amend the ADA and fabricate liability where none seems to exist.

ProSlide's ridership eligibility criteria under Florida law satisfies its burden to demonstrate that those criteria are necessary for the safe operation of the Contested Attractions.[11]

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff Dylan Campbell's Motion for Summary Judgment on Liability (Doc. 29) is **DENIED**.

2. Defendant Universal City Development Partners, Ltd.'s Motion for Summary Judgment (Doc. 30) is **GRANTED**.

---

[11] Finally, both parties refer to 42 U.S.C. § 12182(b)(3), which provides that "[n]othing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others" and defines "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." (Doc. 29, pp. 9–11; Doc. 30, p. 19 n.6; Doc. 37, pp. 10–14; Doc. 39, pp. 18–20). Defendant clouds the issue by arguing, in his response in opposition to Plaintiff's Motion, that the direct threat defense has no bearing on its necessary eligibility criteria defense and, at the same time, arguing that its Motion demonstrates "the 'direct threat' safety risk in contradicting the soundness of the State's reliance on the manufacturer and also the equal, but distinct, safety risk in departing from a uniform standard and instead making potentially thousands of determinations about the abilities or limitations of its guests." (Doc. 39, pp. 18–20). Indeed, Defendant's Motion fleetingly cites to the direct threat exemption in a footnote. (Doc. 30, p. 19 n.6).

First, Defendant's direct threat argument seems misguided, at worst, or unclear, at best, because it implies that Plaintiff posed a direct threat *to himself*, rather than *to others*, as required under the plain language of § 12182(b)(3). Second, this case does not implicate the direct threat exemption. There is no dispute over "a modification of policies, practices, or procedures" or "the provision of auxiliary aids or services" because Plaintiff asserts that he can maintain the proper position on all the Contested Attractions, and he "does not seek any disability-related accommodations . . . to participate in the community activities that he chooses to do." (Doc. 28, ¶¶ 2, B). And there is no discussion of any "significant risk" that Plaintiff poses "to the health or safety of others." Third, there is no need to analyze the direct threat exception because of the Court's decision on the necessary eligibility criteria exception, detailed above.

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Universal City Development Partners, Ltd., and against Plaintiff Dylan Campbell and to thereafter close the file.

**DONE AND ORDERED** in Orlando, Florida on February 7, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties